FILED

04/01/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0455

DA 24-0455

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 64

MITCHELL MCBROOM and BARBARA LEWIS-BACA,

Petitioners and Appellants,

v.

MONTANA BOARD OF PERSONNEL APPEALS and
MISSOULA URBAN TRANSPORTATION DISTRICT,

Respondents and Appellees.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-23-1273
Honorable Jason Marks, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

David W. Diacon, Hrafn Law P.C., Lolo, Montana

For Appellee Missoula Urban Transportation District:

Natasha Prinzing Jones, Tyler M. Stockton, Boone Karlberg P.C., Missoula,
Montana

Susan A. Aaberg, Chief Civil/Administrative Attorney, City of Missoula,
Missoula, Montana

Submitted on Briefs:  February 19, 2025

Decided:  April 1, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Mitchell McBroom and Barbara Lewis-Baca (collectively, the Employees) appeal the June 26, 2024 Order of the Fourth Judicial District Court, Missoula County, denying their petition for judicial review of the final agency decision of the Board of Personnel Appeals (BOPA).  We affirm.

¶2    The Employees present the following issue for review:

> *Whether the Employees' reliance on collective bargaining contract remedies equitably tolled the statute of limitations for filing an Unfair Labor Practice charge.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On June 26, 2022, the Missoula Urban Transportation District (MUTD), a public employer, disciplined the Employees, public employees and bargaining unit members of the Teamsters Local 2 Union (Union), with three days unpaid suspension for alleged violations of the Collective Bargaining Agreement (CBA) between MUTD and the Union. Employees were among a group of MUTD employees who were disciplined for conducting union activity on MUTD's premises during work hours.  The Union and MUTD had agreed to a memorandum of understanding (MOU) changing work and operation hours. Employees attempted to garner opposition among their coworkers to the proposed MOU. MUTD believed these actions violated the CBA and disciplined McBroom and Lewis-Baca, who then challenged their discipline on June 30, 2022, pursuant to their CBA's grievance policy.

¶4    The grievance process concluded on May 4, 2023, when the Union, on behalf of the Employees, and MUTD agreed to settle the dispute without proceeding to arbitration.

2

Under the settlement, MUTD agreed to reduce the discipline against the Employees to written warnings and granted backpay for wages lost during the suspension.

¶5    The Employees believe the Union accepted MUTD's offer without their consent. Consequently, Employees filed an unfair labor practice claim (ULP) against MUTD with BOPA on June 29, 2023.  A BOPA Board Agent reviewed the ULP and determined that the six-month statute of limitations for filing the ULP had lapsed.  The Employees timely appealed for review of this initial determination by BOPA, arguing that public policy required exhaustion of CBA grievance procedure before they could file their ULP and that this process took longer than six months.  On December 1, 2023, BOPA issued its final agency order affirming the determination that the six-month statute of limitations for filing the ULP had lapsed.

¶6    Following the final agency decision of BOPA, the Employees filed for judicial review, arguing that BOPA erred as a matter of law by determining that the grievance process did not equitably toll the statute of limitations.  The District Court concluded that BOPA did not err in determining that the Employees could have filed their ULP before exhausting the grievance process and prior to expiration of the statute of limitations.  The Employees now appeal.

**STANDARD OF REVIEW**

¶7    We review a district court order reviewing an agency action by employing the same standards that the district court used to review the agency decision.  *Watson v. Mont. Dep't of Fish, Wildlife & Parks*, 2023 MT 239, ¶ 12, 414 Mont. 217, 539 P.3d 1126 (citation

3

omitted). A district court reviews an agency's interpretations and applications of law to determine whether they are correct. *Watson*, ¶ 12 (citation omitted). This Court reviews an administrative agency's findings of fact to determine whether they are clearly erroneous in view of the reliable, probative, and substantial evidence in the record. *Watson*, ¶ 12 (citing § 2-4-704(2)(a)(v), MCA).

## DISCUSSION

¶8 A public employer commits a ULP if, as relevant here, the employer interferes with, restrains, or coerces an employee or employees in the exercise of protected labor activity. Section 39-31-401(1), MCA. A ULP must be filed within six months of the alleged unfair labor practice. Section 39-31-404, MCA; Admin. R. M. 24.26.1201(2) (2020).

¶9 The Employees do not dispute that they filed their ULP after the expiration of the applicable six-month statute of limitations provided for in § 39-31-404, MCA, and Admin. R. M. 24.26.1201(2) (2020). They instead argue their reliance on the CBA grievance process, which took nearly a year to complete, equitably tolled the statute of limitations. In general, the equitable tolling doctrine allows for an action to be pursued despite failure to comply with the relevant statutory filing deadlines in limited circumstances. *Lake Cnty. v. State*, 2024 MT 284, ¶ 29, 419 Mont. 201, 559 P.3d 1263 (quotation omitted). When a party has reasonably and in good faith pursued one of several possible legal remedies, the party must meet three additional criteria for equitable tolling to be considered:

> (1) Timely notice to the defendant within the applicable statute of limitations in filing the first claim;

     (2) Lack of prejudice to the defendant in gathering evidence to defend against the second claim; and

     (3) Good faith and reasonable conduct by the plaintiff in filing the second claim.

*Lake Cnty*, ¶ 29 (citation omitted). We have applied this doctrine "sparingly" and warn against applying equitable tolling to "a garden variety claim of excusable neglect." *Weidow v. Uninsured Employers' Fund*, 2010 MT 292, ¶ 28, 246 P.3d 704, 359 Mont. 77 (quotation omitted).

¶10    The Employees assert that public policy requires exhaustion of grievance procedures and thus the one-year delay in filing their ULP claims against MUTD constituted good faith and reasonable conduct. In support of this argument, the Employees rely extensively on *Small v. McRae*, 200 Mont. 497, 651 P.2d 982 (1982). There, we held that the aggrieved employee could not pursue his claims against his employer in court without exhausting the procedures available to him under his collective bargaining agreement. *Small*, 200 Mont. at 504, 651 P.2d at 986. Allowing a bargaining unit member to "sidestep" these bargained for safeguards, we reasoned, would "exert a disruptive influence upon both the negotiation and administration of collective bargaining agreements and effectively deprive employers and unions of the ability to establish a uniform and exclusive method for the orderly settlement of employee grievances." *Small*, 200 Mont. at 504, 651 P.2d at 986. We concluded that the employment agreement controlled a dispute arising from whether the employer followed the "proper procedures" provided for in the agreement. *Small*, 200 Mont. at 504, 651 P.2d at 986.

¶11    *Small* stands for the principle that employees, in general, cannot sidestep a collective bargaining agreement's grievance procedure for resolving claims arising from the employment agreement by filing a ULP claim.  *Small*, 200 Mont. at 504, 651 P.2d at 986. BOPA's own procedures for informal ULP investigations allow for a stay of a ULP pending the resolution of grievance procedures.  Admin. R. M. 24.26.1202(1) (2020). Montana labor regulations provide that "[i]f during the course of the informal investigation of the ULP, the board agent determines the charge may be resolved through the final and binding arbitration provisions contained in the applicable CBA, the board agent may issue a recommended order staying the informal investigation."  Admin. R. M. 24.26.1202(1) (2020).  The board agent may then dissolve the stay upon a party's request if the ULP has not been resolved within a reasonable time, the dispute giving rise to the ULP remains unresolved at the conclusion of arbitration, or the stay contradicted Montana laws governing collective bargaining.  Admin. R. M. 24.26.1202(5) (2020).  The District Court understood the regulation as not only providing that a ULP claim could be filed while the grievance proceeds, but that it contemplated simultaneous, parallel actions to allow for an employee to protect his or her rights.  Such parallel proceedings comport with our rule in *Small*, which did not foreclose maintaining separate actions provided an aggrieved employee also pursued claims arising from and governed by the CBA pursuant to those terms.  *Small*, 200 Mont. at 505, 651 P.2d at 987.  The *Small* Court did provide the following exception: "Only in those cases where it is certain that the arbitration clause contained in a collective bargaining agreement is not susceptible to an interpretation that

6

covers the dispute is an employee entitled to sidestep the provisions of the collective bargaining agreement." *Small*, 200 Mont. at 504, 651 P.2d at 986.

¶12 In *Winchester v. Mountain Line*, 1999 MT 134, ¶ 24, 982 P.2d 1024, 294 Mont. 517, we considered the exception noted in *Small*.[1] There, Winchester filed a ULP alleging a violation of state law by his employer after a grievance hearing upheld his discharge. *Winchester*, ¶ 5. Winchester's ULP alleged state law claims arising from §§ 39-31-201 and -401, MCA. *Winchester*, ¶ 28. Mountain Line allegedly retaliated against Winchester for his efforts to garner support among his colleagues to decertify their union over perceived deficiencies in representation. *Winchester*, ¶ 7. Section 7.2 of Winchester's CBA provided: "any *alleged* violation of [. . .] State statutes *shall be processed through the appropriate Federal and State agency(s) and will not be subject to the grievance and arbitration procedures as set forth in* [the CBA]." *Winchester*, ¶ 25 (emphasis added). Because the CBA specifically excluded such claims from the grievance and arbitration procedure, we concluded BOPA improperly "deferred to the arbitration procedure in the CBA" when it dismissed the unfair labor practices claim. *Winchester*, ¶¶ 28-29.

¶13 Here, the Employees allege nearly identical violations as in *Winchester*. Section 6.01 of the CBA prohibits, relevant here, MUTD from engaging in "coercion, intimidation, or discrimination [. . .] for reasons of [. . .] Union membership [. . .]." Under Section 6.02 of the CBA, "any alleged violation of [. . .] applicable [. . .] State statutes shall be processed through the appropriate Federal and State agencies and will not be subject to the grievance

---

[1] Coincidentally, *Winchester* involved an employee represented by the same Union and subject to a practically identical CBA as the instant case.

and arbitration procedures as set forth in [the CBA]." As the District Court noted, this is essentially a verbatim reproduction of the language in Section 7.2 of the *Winchester* CBA. We afford the language and provisions contained in a CBA their ordinary meaning. *Hughes v. Blankenship*, 266 Mont. 150, 154, 879 P.2d 685, 687 (1994) (citing *NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695, 697 (8th Cir. 1985)). Employees' ULP asserting MUTD discriminated against them for their participation in protected activities related to organized labor and violations of §§ 39-31-201, -305, and -401, MCA, which fall under the exemptions from arbitration and grievance procedures of Section 6.02 of the CBA. *See Small*, 200 Mont. at 504, 651 P.2d at 986 ("Only in those cases where it is certain that the arbitration clause contained in a [CBA] is not susceptible to an interpretation that covers the dispute is an employee entitled to sidestep the provisions of the collective bargaining agreement."); *Winchester*, ¶ 28 ("Thus, it is 'certain,' under Section 7.2 of the CBA, that Winchester's [ULP] [. . .] was not subject to the grievance and arbitration provisions in the CBA."). Employees' claim that a public policy generally requiring exhaustion of CBA grievance and arbitration procedures finds footing in neither our caselaw nor their CBA.[2]

¶14     We are therefore unpersuaded by Employees' argument that public policy requires the exhaustion of the CBA grievance and arbitration process before filing a ULP claim.

---

[2] On appeal, the Employees argue that because MUTD did not rely on *Winchester* in the administrative hearing MUTD cannot rely on that precedent now. We first observe that a litigant's failure to recite applicable authority does not constrain this Court in applying correctly our precedent and relevant law. Second, our review of the record reveals that BOPA's Board Agent examined *Winchester* in her order dismissing the Employees' ULP and thus the District Court appropriately applied *Winchester* to the instant case. *See* § 2-4-704(1), MCA.

Nothing in our law, statutes, or regulations prevented Employees from pursuing their ULP claim immediately upon MUTD taking disciplinary action against them in 2022. The law provides a six-month statute of limitations for filing a ULP claim and contemplates that a ULP and grievance procedure can proceed simultaneously or be stayed by the BOPA. Section 39-31-404, MCA; Admin. R. M. 24.26.1201 and 24.26.1202 (2020). MUTD engaged in the grievance process with the Union, which resulted in an agreement between both parties as to the outcome of the dispute. The representation of the Employees' interests by their Union is precisely the kind of relationship bargained for and agreed upon within the CBA—by the Employees, the Union, and MUTD. The Employees risked dissatisfaction with the ultimate outcome of that process by not protecting their rights with a parallel filing of a ULP within the statute of limitations.[3] Limitation periods are designed to ensure justice by preventing surprise. *Weidow*, ¶ 28 (quotation omitted). Accordingly, the District Court correctly affirmed BOPA's dismissal of the Employees' ULP claim for failing to abide by the relevant statute of limitations.

## CONCLUSION

¶15 The Employees failed to file a ULP against MUTD within the six-month statute of limitations provided for by § 39-31-404, MCA. Our caselaw does not support equitably tolling the statute of limitations for a ULP claim arising under state law which was specifically excluded from the CBA's grievance procedures. The District Court correctly

---

[3] The Employees did not seek redress from their Union under § 39-31-402, MCA, for their dissatisfaction with the settlement reached with MUTD.

affirmed BOPA's determination that the statute of limitations barred Employees' ULP claim against MUTD.

¶16    Affirmed.


                                        /S/ LAURIE McKINNON

We Concur:

/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON