**2024 UT App 124**

# THE UTAH COURT OF APPEALS

CHECKERPROP UTAH 199 EAST, LLC,
Appellee,
*v.*
KRISTIN BUTCHER AND HEATHER GIBSON,
Appellants.

Opinion
No. 20221118-CA
Filed September 6, 2024

Second District Court, Farmington Department
The Honorable Rita Cornish
No. 220700034

Steven H. Bergman, Attorney for Appellants

Matthew L. Anderson, Jeffrey C. Bramble, and
Anna P. Christiansen, Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and AMY J. OLIVER
concurred.

MORTENSEN, Judge:

¶1 Kristin Butcher and Heather Gibson (collectively, Appellants) leased commercial space to open a private fitness facility from Checkerprop Utah 199 East, LLC (Checkerprop). Plans went awry, the project never got off the ground, and the lease payments were not made. Checkerprop sued for breach of the lease. Default judgment was entered against Appellants, who subsequently argued in a motion that the default judgment should be set aside on the basis of excusable neglect. This appeal follows the denial of that motion. We affirm.

BACKGROUND

¶2    Checkerprop is the owner and landlord of a piece of commercial real property in Layton, Utah. Checkerprop entered into a lease with Butcher for the property in May 2021 for a term of sixty-two months. Appellants signed as guarantors on the lease. At some point, they allegedly fell behind on their payments under the lease, a circumstance that prompted Checkerprop, beginning in October 2021, to attempt to reach a resolution with Appellants regarding the past due rent.

¶3    On November 24, 2021, Checkerprop's counsel emailed Butcher to communicate Checkerprop's "proposal to terminate the lease and reach a compromise." Checkerprop offered to release Appellants from all obligations under the lease for a lump sum of about $30,000, but conditioned the offer on acceptance by December 1. Butcher responded that expecting her to come up with the amount so quickly was "extremely unreal" and that she would be retaining an attorney, who would be in contact with Checkerprop's counsel.

¶4    On December 1, Checkerprop emailed Butcher regarding a resolution of the matter. Butcher informed Checkerprop that giving her a week to come up with $30,000 was "more than unreasonable" and that she had told Checkerprop's counsel that she would provide her counsel's contact information once she had retained counsel. She also told Checkerprop that her soon-to-be-retained counsel would reach out to Checkerprop.

¶5    On December 27, Checkerprop emailed Butcher an updated outstanding balance and requested she have her attorney "reach out to resolve this issue." The same email indicated that Checkerprop's counsel would "move forward with the next legal steps to collect" if Butcher did not respond by December 30.

¶6    On January 7, 2022, Checkerprop initiated the instant action against Appellants, asserting various claims for relief based

on the alleged breach of the lease. On January 13, Butcher and Gibson were both personally served with a complaint and a summons. Butcher was served at an address in Huntsville, Utah. Gibson was served at an address in Marriott-Slaterville, Utah. The service addresses were not the same as the address included on the summons, which was also the address listed on the lease document.

¶7 On February 1, Appellants responded by sending the following handwritten note to Checkerprop's counsel:

> Two weeks after moving into the property we were contacted by the city stating we were in violation of land easement guidelines, and that we had to vacate the property. The city stated the property owner should have known our type of business was not permitted and should not have let us move forward with signing said contract.
>
> We are working with our attorney to work out the fine details.

Both Appellants signed the note. No answer to the complaint, however, was forthcoming.

¶8 More than three months after service, on April 21, Checkerprop filed a motion for entry of default judgment, *see* Utah R. Civ. P. 55, which was served by mail on both Appellants at the same addresses where they were personally served the complaint and the summons. Notably, the motion for entry of default judgment included bilingual cautionary language stating that Appellants had only fourteen days to respond to the motion. The default certificate, which was served by mail on both Appellants at those same addresses also on April 21, was entered on April 25. Upon Checkerprop's request to submit, the district court entered default judgment against Appellants on May 17.

¶9 On June 14, Appellants filed a motion to vacate the default judgment and to set aside the default certificate. They argued that the default judgment should be set aside "for good cause based on excusable neglect" pursuant to rule 60(b)(1) of the Utah Rules of Civil Procedure.

¶10 Appellants argued that the following circumstances justified setting aside the judgment. First, Appellants asserted that their handwritten note to Checkerprop's counsel demonstrated they did not intentionally ignore the complaint and took steps to resolve the matter prior to the entry of default judgment. Second, they maintained that Checkerprop's counsel never responded to the handwritten note or provided information about the court proceeding, thereby making Appellants unaware that Checkerprop "was seeking a default judgment." More specifically, they asserted that they "never received notice" of the motion for entry of default judgment. Third, they contended that the complaint lacked this cautionary language required by rule 8(a) of the Utah Rules of Civil Procedure:

> A pleading requesting relief must include the following caution language at the top right of the first page, in bold print: **If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.** Failure to include the caution language may provide the responding party with a basis under Rule 60(b) for excusable neglect to set aside any resulting judgment or order.

*Id.* R. 8(a).[1] Fourth, after discovering that default judgment had been entered against them, Appellants immediately contacted an

---

1. Rule 8(a) was amended to include this cautionary language, effective May 1, 2021. *Compare* Utah R. Civ. P. 8(a) (2020), *with id.* (2021).

attorney to represent them and timely filed a motion to set aside the judgment. Finally, Appellants asserted that they had meritorious defenses that would preclude recovery on the claims brought by Checkerprop. The motion to vacate was accompanied by declarations from both Appellants asserting, among other things, that they had never received Checkerprop's motion for entry of default judgment.

¶11 The district court denied the motion. First, based on the evidence and documents presented, the court concluded that Appellants' failure to respond to the complaint for lack of the cautionary language could not be attributed to excusable neglect:

> This is not a case where [Appellants] may have been caught unaware [by the lack of the cautionary language] that a motion or other filing was seeking relief or that a response was required. Here, the Summonses included almost precisely the cautionary language that [Appellants] claim would have prompted them to timely respond, *e.g.*, the Summons states that if [Appellants] failed to timely respond to the Complaint[,] judgment by default would be taken against them for the relief sought in the Complaint.

¶12 Second, the court rejected Appellants' assertion that Checkerprop's counsel's failure to respond to their handwritten letter led them into a false sense of security that no further action would be taken in the lawsuit, noting that nothing in the letter requested a response from Checkerprop's counsel, asked for more information, or sought an extension.

¶13 Third, the court concluded that Appellants did not act with the diligence one would expect of a reasonably prudent person in their circumstances: "A reasonably prudent person in [Appellants'] position does not assume that a lawsuit is not moving forward because they sent a letter to the opposing party's

counsel saying that they had an excuse for not performing their contractual obligations and that they were working on the details with counsel."

¶14 Lastly, the court rejected Appellants' claim that Checkerprop failed to notify them it was seeking default. It noted that Checkerprop had attempted to serve Appellants with the motion for entry of default judgment and the default certificate at the same addresses where they were personally served the complaint and the summons, concluding, "The likelihood that delivery of those documents failed to both [Butcher and Gibson] is very small. If one or both [Appellants] moved after the date they were served they were the only ones that would have known that [Checkerprop's] counsel and the Court did not have their current mailing addresses."

¶15 Having concluded that Appellants' failure to respond to the complaint was not the result of excusable neglect, the district court did not address the arguments related to the merits of Appellants' defenses. *See Asset Acceptance LLC v. Stocks*, 2016 UT App 84, ¶ 13, 376 P.3d 322 ("It is unnecessary, and moreover inappropriate, to even consider the issue of a meritorious defense [under a rule 60(b) motion] unless the court is satisfied that a sufficient excuse has been shown." (cleaned up)). This appeal follows.

ISSUE AND STANDARD OF REVIEW

¶16 Appellants assert the district court abused its discretion by denying their rule 60(b) motion. Appellants argue that their motion should have been granted for three reasons: (1) because the complaint omitted the cautionary language mandated by rule 8(a) of the Utah Rules of Civil Procedure; (2) because they demonstrated excusable neglect, alleged meritorious defenses to Checkerprop's claims, and timely made their rule 60(b) motion; and (3) because they allegedly did not receive notice of the motion

for entry of default judgment and the default certificate prior to the district court's ruling and order.

¶17 "Appellate courts review a district court's denial of a 60(b) motion under an abuse of discretion standard of review." *Cohen Braffits Estates Dev., LLC v. Shae Fin. Group, LLC*, 2024 UT App 12, ¶ 36, 543 P.3d 1277 (cleaned up), *cert. denied*, 550 P.3d 994 (Utah 2024). "But we review the legal conclusions embedded in the district court's denial of a rule 60(b) motion for correctness." *State v. Ogden*, 2023 UT 23, ¶ 17, 538 P.3d 595 (cleaned up).

ANALYSIS

¶18 "In general, a movant is entitled to have a default judgment set aside under 60(b) if (1) the motion is timely; (2) there is a basis for granting relief under one of the subsections of 60(b); and (3) the movant has alleged a meritorious defense." *Menzies v. Galetka*, 2006 UT 81, ¶ 64, 150 P.3d 480. "These considerations should be addressed in a serial manner, and thus there is no need to consider whether there is a basis for setting aside a default judgment if the motion was not made in a timely manner, and no need to consider whether there is a meritorious defense if there are not grounds for relief." *Rojas v. Montoya*, 2020 UT App 153, ¶ 13, 477 P.3d 38 (cleaned up). Here, there is no dispute that Appellants' rule 60(b) motion was timely. Accordingly, we focus our analysis on whether there was a basis for granting relief.

I. Cautionary Language

¶19 Appellants first argue that the district court abused its discretion in not vacating the default judgment based on Checkerprop's failure to include the cautionary language required by rule 8(a) of the Utah Rules of Civil Procedure in the complaint. We note that no Utah appellate court has construed this relatively new language in rule 8(a).

¶20    As a threshold concern, there is no question that the complaint did not include the cautionary language mandated by rule 8(a). With its explicit instructions regarding the placement and font characteristics of the language, the provision is not hard to follow, and Checkerprop's counsel should have been more attentive in drafting the complaint. *See Amar v. LSREF 2 APEX 2, LLC*, No. 12-CV-969, 2012 WL 5465808, at *5 (D. Nev. Nov. 8, 2012) ("Procedural rules are meant to be followed and are not discretionary guidelines to be followed at a party's whim.").

¶21    But the failure to include the cautionary language does not result in an automatic invalidation of a complaint or prove fatal to any attempt to serve it on a party. Indeed, rule 8(a) makes this clear by its use of discretionary language: "Failure to include the caution language *may* provide the responding party with a basis under Rule 60(b) for excusable neglect to set aside any resulting judgment or order." Utah R. Civ. P. 8(a) (emphasis added). In response, Appellants argue that the use of "may" in the rule is to "preclude represented parties from taking advantage of an error while still protecting unrepresented parties," such as Appellants, by allowing them to assert excusable neglect when the cautionary language is missing.

¶22    Rule 8(a), even with the addition of the cautionary language, in no way purports to alter the established standard of review for rule 60(b) motions, and Appellants have not argued otherwise. Thus, while the cautionary language is mandatory under rule 8(a), it still remains within the district court's discretion to grant or deny a rule 60(b) motion based on the totality of the circumstances. In other words, the failure to include rule 8(a)'s cautionary language does not create a standalone, per se path to assert excusable neglect, but provides a basis for a motion to set aside under rule 60(b)—a motion for which a district court enjoys "broad discretion" to grant or deny. *See Menzies v. Galetka*, 2006 UT 81, ¶ 54, 150 P.3d 480. Having said this, we acknowledge that the cautionary language required by rule 8(a)

likely will lead to a case where the circumstances will justify a court setting aside a default on the sole basis that this language was not included. This is not that case.

¶23    As an initial matter, Appellants stated in their handwritten letter that they were "working with [their] attorney to work out the fine details" in reaching a resolution to the dispute. So, within about two weeks of receiving the complaint, Appellants had responded in writing to Checkerprop's counsel that they were, in fact, represented. And in the several months before the complaint was even filed, Butcher had made clear to both Checkerprop and Checkerprop's counsel that she was in the process of retaining counsel. *See supra* ¶¶ 3–4. Contrary to what Appellants now assert, the record suggests that Checkerprop and its counsel had every reason to believe that Appellants were represented. While this perception does not excuse Checkerprop's failure to include the cautionary language, neither is this case typical of those involving unrepresented parties where the pro se status is clear. Here, after being served the complaint, Appellants indicated that they were represented and working with an attorney, only now to claim that was never the case.

¶24    Moreover, the status of represented versus unrepresented is not determinative, as Appellants suggest, in the context of a motion to set aside for want of the cautionary language. "When interpreting a rule of civil procedure, we look to the express language of that procedural rule and to the cases interpreting it." *Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, ¶ 16, 238 P.3d 1035 (cleaned up). Significantly, the plain language of rule 8(a) makes no reference to parties being unrepresented or represented as a factor. While there was clearly some discussion about the benefit cautionary language might provide unrepresented parties by committee members revising the rule, there is no suggestion in the rule itself or in the published advisory committee's notes that a party's pro se status necessarily establishes a basis for excusable neglect in the absence of the

cautionary language.[2] Again, the opposite is indicated by our supreme court employing the well-used and unambiguous term "may" in the rule.

¶25   Owing to the recent amendment of rule 8(a), there is no caselaw of which we are aware that specifically addresses the cautionary language (or its omission) in a complaint. But as a general matter, our caselaw does not give unrepresented parties a pass when it comes to establishing excusable neglect under rule 60(b). "Rule 60(b)'s use of 'excusable' as a modifier of 'neglect' makes clear that *mere neglect alone* is an insufficient justification for relief." *Asset Acceptance LLC v. Stocks*, 2016 UT App 84, ¶ 16, 376 P.3d 322 (cleaned up). Even for a pro se party, it's not enough to claim "neglect" arising from some deficiency in the complaint; that neglect must also be "excusable." And one way neglect becomes excusable is by showing that a party acted with the diligence of a reasonable person under the circumstances. Indeed, "diligence on the part of the party"—including a pro se party—"claiming excusable neglect is an essential element of the inquiry, and relief may not be granted based on other equitable

---

2. *See* Utah Supreme Court Advisory Committee on Rules of Civil Procedure, *Summary Minutes* 3 (Dec. 2, 2020), https://legacy. utcourts.gov/utc/civproc/wp-content/uploads/sites/10/2020/11/ December-2020-URCP-Minutes.pdf    [https://perma.cc/DK4K-SNAL] ("[A committee member] introduced comments regarding the proposed notice requirements in Rules 4, 7, 8, 36, and 101, including comments expressing concern that the requirements to provide notices regarding consequences and resources would be overly burdensome, and that the requirements should apply only in cases where there is an unrepresented party. After considering the comments, the committee determined that requiring more notice would be a better policy because it is not always clear when a party is represented, noting that in some cases a limited scope attorney or licensed paralegal practitioner may be involved for only a part of the case.").

considerations where a party has exercised no diligence at all." *Id.* ¶ 19 (cleaned up); *accord Weber v. Mikarose, LLC*, 2015 UT App 130, ¶ 14, 351 P.3d 121. So, even though a complaint might lack certain mandatory language, our caselaw does not support the proposition that pro se litigants should be entitled to special consideration in asserting excusable neglect as a basis to set aside judgment merely by virtue of being pro se litigants. They must also show that they acted with the diligence of a reasonable person, even in light of the opposing party's failure to comply with the cautionary language requirement of rule 8(a). *See Asset Acceptance*, 2016 UT App 84, ¶ 19 ("While we acknowledge that a [pro se] party need not be perfectly diligent in order to obtain relief under rule 60(b), some diligence is necessary." (cleaned up)).

¶26  Rather than viewing the lack of cautionary language as establishing an automatic finding of excusable neglect for pro se litigants, a better approach is precisely that taken by the district court. Instead of looking at Appellants as merely represented or unrepresented, the district court exercised its discretion by considering the totality of the circumstances to determine if there was a basis for excusable neglect. And with regard to the cautionary language, the district court noted that the summons contained equivalent cautionary language as to what should have been included in the complaint. The summons warned, "You are . . . required to file an answer in writing to the Complaint . . . within twenty-one (21) days of service . . . . If you fail so to do, judgment by default will be taken against you for the relief demanded in the Complaint . . . ."[3] Given this language, we agree

---

3. Appellants also claim that the summons lacked the bilingual notice required by rule 4(c)(1)(G) of the Utah Rules of Civil of Procedure. It appears they are correct that Checkerprop's counsel also failed to follow this procedural rule. However, Appellants make no assertion that either of them would have benefited from

(continued…)

with the district court that this is not a case where Appellants were caught unaware that a timely response was required.

¶27 The court also considered the relatively long and involved communications that had gone on between the parties. For months, both before and after service of the complaint, Checkerprop had sought a resolution of the past due rent and had indicated its intent to seek redress through the courts. As stated, we review the decision of the district court for abuse of discretion, which means that in order to reverse, we would need to conclude that "no reasonable person would take the view adopted by the [district] court." *T-Mobile USA, Inc. v. Utah State Tax Comm'n*, 2011 UT 28, ¶ 41, 254 P.3d 752 (cleaned up). Here, we cannot conclude the district court abused its discretion in deciding that Checkerprop's failure to incorporate the cautionary language did not establish Appellants' excusable neglect.

## II. Other Bases for Excusable Neglect

¶28 Appellants also assert that the district court abused its discretion when it determined that there were no additional bases for relief from default under rule 60(b).

---

the inclusion of the bilingual notice. And they concede that the lack of the bilingual notice is not the grounds on which they are asserting their appeal. Rather, on appeal they make the point that since the district court relied on the summons to establish the presence of the cautionary language, Checkerprop should have complied with all the provisions of rule 4(c)(1). As we have expressed, *see supra* ¶ 20, we agree that Checkerprop's counsel was less than careful in failing to fully comply with the Utah Rules of Civil Procedure in this respect. But because Appellants explicitly state that the lack of the bilingual notice is not a grounds on which they are asserting their appeal, we decline to address this issue further.

¶29 Appellants argue that the district court erred in determining that it was not reasonable for Appellants "to expect Checkerprop's counsel to contact them about the lawsuit after serving them." But the record supports the decision of the district court. After being served with the complaint, Appellants sent a handwritten letter to Checkerprop's counsel. As represented in the record, the letter did not contain contact information. Rather, it merely stated that Appellants were working with their attorney to resolve the matter. The letter did not request that Checkerprop's counsel reach out to them in any way. Certainly, nothing evidences any invitation, request, or expectation of further communication; rather, it appears to just be a notice that they were working with "[their] attorney" to resolve the "fine details." Any reasonable attorney would view this as notice that Appellants' yet-unidentified attorney would shortly be in contact. Given all this, we fail to see how the court abused its discretion in concluding that Appellants did not act reasonably in this respect, thus preventing them from claiming excusable neglect.

¶30 Appellants also argue that the district court abused its discretion in rejecting their "statements under oath that they never received" the motion for entry of default judgment.[4] They

---

4. Appellants also claim that the district court concluded they "were not diligent because they did not apprise the Court or Checkerprop's counsel of their addresses." In fact, the district court did not so conclude. Rather, it stated, "*If* one or both [Appellants] moved after the date they were served they were the only ones that would have known that [Checkerprop's] counsel and the Court did not have their current mailing addresses. [Appellants'] failure to update their contact information with the Court, which may have led [Checkerprop's] counsel into the mistake of serving motion papers to incorrect addresses, cannot support a claim for mistake under" rule 60(b)(1). (Emphasis added.) Thus, the conclusion identified by Appellants was made

(continued…)

argue that instead of relying on the statements of Appellants that they never received the notices, the district court relied on certificates of service that had been mailed to the same addresses where they were served the complaint and the summons. Appellants argue that the motion for entry of default judgment should have been served at the address listed on the lease or sent via email.

¶31    But it is important to note that the district court relied on the information provided by Appellants in determining that Checkerprop properly served the motion for entry of default judgment. When the district court concluded that the likelihood Appellants did not receive notice of the motion for default judgment and the default certificate was "very small," the court was presented with information that the notices were mailed to the same addresses where Appellants were personally served the summons and the complaint. There was no indication that the addresses used for the personal service were in any way incorrect.[5] Given the information Appellants provided to the

---

not in the context of Appellants' lack of diligence but was referring to a situation contingent on their having moved after initial service.

5. On appeal, Appellants assert that the address at which Gibson was served (both personally and for the mailed notices) belonged to a restaurant, and they invite us to consult Google to verify this claim. The assertion that the place of service was a restaurant does not appear in the record. Nor is there any indication that this concern was expressed to the district court. And it's not our job to do original Google research of facts on appeal. Indeed, it is a maxim of appellate review that we "will not consider evidence which is not part of the record." *Hansen & Mecham Invs. LLC v. Hansen*, 2022 UT App 17, ¶ 42, 505 P.3d 1152 (cleaned up). Accordingly, we disregard this statement as not supported by the record.

district court, we are hard-pressed to see how the district court abused its discretion in denying the motion to set aside.[6]

### III. Attorney Fees on Appeal

¶32   Lastly, Checkerprop seeks attorney fees for the work performed on appeal. Appellants urge us to deny this request because Checkerprop never *received* fees for the work performed below. In the default judgment, the district court ordered in Checkerprop's favor an "award for all costs and reasonably incurred attorney fees, until this judgment is fully satisfied, as may later be established by declaration, affidavit, or hearing." But there is no indication in the record that Checkerprop ever reduced the fees it was awarded below to judgment in a timely manner by establishing an actual amount by declaration or affidavit pursuant

---

6. Appellants also assert that Checkerprop failed to serve a notice of the final default judgment. *See* Utah R. Civ. P. 58A(g) ("The party preparing the judgment shall promptly serve a copy of the signed judgment on the other parties in the manner provided in Rule 5 and promptly file proof of service with the court."). Appellants insist that they raised this issue generally below when they claimed that they never received notice of the motion for entry of default judgment and the default certificate. We are not persuaded. These are distinct categories. By failing to even bring up the matter of Checkerprop's alleged failure to serve a copy of the judgment in the rule 60(b) motion proceedings, Appellants failed to raise the issue below, thus depriving the district court of the opportunity to address it. Nor do they argue that any exceptions to the preservation rule apply. In any case, they concede that they "do not raise this as a separate ground for reversal" but point to it as an "indication of Checkerprop's failure to comply with the Rules of Civil Procedure" and to demonstrate the "inconsistent treatment" they received at the hands of the district court. We decline to further consider this aspect of Appellants' argument on appeal.

to the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 73(a)–(c) (stating that attorney fees "must be claimed by filing a motion for attorney fees no later than 14 days after the judgment is entered" and by, along with other requirements, supporting that motion with an affidavit to establish the reasonableness of the fees). Indeed, in its briefing, Checkerprop does not assert it *actually received* the fees it was awarded below. Thus, Appellants argue that Checkerprop is not entitled to fees now because "to recover fees on appeal, a prevailing party must have 'received attorney fees below.'" (Quoting *Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998).)

¶33 Appellants push *Valcarce* too far. First, the fees in *Valcarce* were awarded pursuant to statute, *see id.* at 311, while here, the entitlement arises from contract. Second, the language in *Valcarce* is nowhere near as mandatory as Appellants' use of "must" suggests. Instead, *Valcarce*'s language is much more nuanced: "When a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Id.* at 319 (cleaned up). So, rather than saying receiving fees below is a prerequisite to receiving them on appeal, as Appellants claim, *Valcarce* says receiving fees below entitles a party to receive them on appeal. Nowhere does *Valcarce* hold that the *non-receipt* of fees below precludes an award of fees on appeal.[7]

---

7. In at least one decision, this court determined that a party not *awarded* fees below pursuant to a contract provision was entitled to fees when it prevailed on appeal. *See Robertson's Marine, Inc. v. I4 Sols., Inc.*, 2010 UT App 9, ¶ 18, 223 P.3d 1141. In that case, neither party was awarded fees below, but this court concluded that one party would have been awarded fees below if it had not brought its own unsuccessful breach of contract claim. *Id.* ¶¶ 18–20. Under these "somewhat unique circumstances," *id.* ¶ 18, the

(continued…)

¶34 Thus, the fact that Checkerprop did not act to collect fees below by following the procedure set down in rule 73 does not change the fact that it was *awarded* and *entitled to* those fees. Nor does Checkerprop's failure to timely establish and collect those fees below preclude its entitlement to fees on appeal pursuant to the terms of the lease, which is a matter of contract. Indeed, according to the terms of the lease, the prevailing party is entitled to an award of all costs and attorney fees on appeal: "In the event suit or action is filed by either Party against the other to . . . enforce this Lease, the unsuccessful Party to such litigation agrees to pay to the prevailing Party all costs and expenses, including attorneys' fees incurred therein, *including the same with respect to an appeal*." (Emphasis added.) It is well established that "a party entitled by contract . . . to attorney fees below and that prevails on appeal is entitled to fees reasonably incurred on appeal." *Federated Cap. Corp. v. Haner*, 2015 UT App 132, ¶ 19, 351 P.3d 816 (cleaned up); *accord UDAK Props. LLC v. Spanish Fork, UT Realty LLC*, 2020 UT App 164, ¶ 14, 480 P.3d 1052; *KB Squared LLC v. Memorial Bldg. LLC*, 2019 UT App 61, ¶ 37, 442 P.3d 1168; *Cougar Canyon Loan, LLC v. Cypress Fund, LLC*, 2019 UT App 47, ¶ 19, 440 P.3d 884. Because the district court determined that Checkerprop was entitled to an award of attorney fees below under the terms of the lease, Checkerprop is also entitled to fees as the prevailing party

---

court concluded that the party satisfied the requirement of having been awarded fees below, *id.* ¶ 20. Here, we are dealing with a different situation because Checkerprop actually was awarded fees below—albeit fees that were never collected. Nevertheless, the conclusion in *Robertson's Marine* remains consistent with the principle applied in other jurisdictions. *See* 20 C.J.S. *Award of attorney's fees as costs on appeal* § 201 (2024) ("Successful or prevailing parties may be entitled to an award of attorney's fees on appeal, regardless of a lack of an award below, where adequate grounds for the award exist." (cleaned up)).

on appeal. We remand the case for a determination of those fees and costs.

CONCLUSION

¶35    The district court acted within its discretion in denying Appellants' requests to set aside the default judgment against them. We remand this matter for the sole purpose of determining the amount of Checkerprop's award of costs and attorney fees on appeal. The decision of the district court is affirmed.

––––––––––